**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

UNITED STATES OF AMERICA                                                                                          PLAINTIFF

v.                                          NO. 4:12CR00220 JLH

JORGE ALBERTO ZAMORA-GARCIA                                                                          DEFENDANT

**OPINION AND ORDER**

Jorge Alberto Zamora-Garcia has been indicted on one count of possessing with intent to distribute more than 500 grams of a mixture and substance containing a detectible amount of methamphetamine. The methamphetamine was seized from a hidden compartment attached to the underbody of Zamora-Garcia's vehicle following a traffic stop on July 23, 2012. Zamora-Garcia has filed a motion to suppress. The Court conducted an evidentiary hearing on the motion at which a video-recording of the traffic stop was introduced into evidence. For reasons that will be explained, the motion is denied.

On the morning of July 23, 2012, Corporal Lowry Astin of the Arkansas State Police was on patrol on Interstate 40 east of Forrest City, Arkansas. As he was parked in the median watching the traffic, he saw a black Lincoln traveling east and dragging an object underneath the car. Because of the possibility that the object might constitute a hazard to the occupants of the car or others, Astin initiated a traffic stop.

Zamora-Garcia was the driver and the owner of the vehicle. He had two passengers – his sister and her daughter – with him. According to Astin, when he approached the driver's side of the vehicle, Zamora-Garcia had his wallet in his hands to retrieve his driver's license, but his hands were shaking so badly that he nearly threw the wallet out the window. Astin explained the purpose of the stop, showed Zamora-Garcia the object underneath his car, and invited him to sit in the patrol car

while the two of them continued the conversation. While they were in the patrol car, Astin made a radio request that Zamora-Garcia's license be verified, and the response confirmed that the license was valid.

After Astin verified that Zamora-Garcia's license was valid, the following colloquy occurred:

> Astin:  Anything illegal in the car?
>
> ZAMORA:     No sir.
>
> Astin:  Do you mind if I search it?  Can I?
>
> ZAMORA:     Yeah, if you want to.

Astin began the search in the trunk area of the car, and asked Zamora-Garcia to stand to his right, which he did. Zamora-Garcia then watched Astin conduct the search. A large bag in the trunk obstructed the search at one point, and Zamora-Garcia voluntarily removed that bag from the trunk and set it on the shoulder of the road to the rear of the vehicle.

While searching the car, Astin noticed that the carpet, which appeared to be factory-issue, was glued down. According to Astin, it is not a common practice for automobile manufacturers to glue the carpet in the trunk down. In Astin's experience, when the carpet in the trunk is glued down, a hidden compartment is often found underneath the trunk.

After searching the trunk, Astin crawled underneath the car with his flashlight and saw, among other things, an after-market metal box attached to the underbody of the vehicle. Based on his training and experience, Astin believed that the existence of a hidden compartment indicated a likelihood that a controlled substance or other contraband was present. Astin also believed, based on his training and experience, that the hidden compartment likely had a trap door near the driver's side of the vehicle.

While Astin was attempting to find the trap door by which he could gain entrance into the compartment, he was joined by Arkansas State Trooper Keith Ponder. Eventually, Astin and Ponder decided to take the vehicle to company headquarters where they could remove the left wheel without danger from oncoming traffic. Astin then said to Zamora-Garcia, "What I need you to do is follow me back to headquarters. We need to pull this wheel off and look." Zamora-Garcia responded affirmatively and said, "Okay." Astin said, "It doesn't look right to me," and Zamora-Garcia responded, "That's fine." Zamora-Garcia asked whom he should follow, and Ponder said that he Zamora-Garcia should follow him. Then they traveled to the company headquarters, which was six or eight miles away. Although the phrasing used by Astin could indicate either an order or a request, his tone of voice was more consistent with a request than a command; and it is apparent from the video-recording that Zamora-Garcia voluntarily drove his vehicle to company headquarters.

At company headquarters, Zamora-Garcia's sister asked for directions to a bathroom for the child, and they were directed to an office building, where they had access to restrooms, vending machines, and the like. Before they went into the office building, Astin patted Zamora-Garcia down – for the first time. Zamora-Garcia and his passengers stayed in the room where drivers' license examinations are conducted while the officers removed the left wheel and continued to seek entrance into the hidden compartment. Zamora-Garcia and his passengers were unattended during that time.

Eventually, Ponder drilled a hole through the floor of the trunk into the hidden compartment. The drill bit came out with green cellophane and a white powder that appeared to be crystal methamphetamine. Shortly after Ponder drilled through the floor of the trunk, the officers found the trap door to the hidden compartment, pried it open, and retrieved fourteen one-pound cellophane bags of what later proved to be methamphetamine.

After the officers retrieved the methamphetamine from the hidden compartment, Astin placed Zamora-Garcia under arrest and informed him of his *Miranda* rights. Zamora-Garcia declined to give a statement or to answer questions. Later in the day, DEA investigators arrived and again informed Zamora-Garcia of his *Miranda* rights, and he again declined to give an interview.

During the entire time that this search at the company headquarters was ongoing, Zamora-Garcia was in the room where the drivers' license examinations are conducted. The door to that room is approximately fifty feet from the place where the vehicle was searched. The search of the vehicle was visible from that room.

The first issue is whether the stop was a lawful traffic stop. It was. Arkansas law provides that each vehicle that travels on any highway in the state must be in safe mechanical condition, and any law enforcement officer who has reason to believe that a vehicle may have safety defects has cause to stop the vehicle. Ark. Code Ann. §§ 27-32-101 and 102. Astin's observation of an object being drug underneath Zamora-Garcia's vehicle gave him probable cause to stop the vehicle pursuant to these statutes. It is well established that a minor traffic violation provides probable cause for a traffic stop. *United States v. Stachowiak*, 521 F.3d 852, 855 (8th Cir. 2008).

Although the stop and the initial conversation with Zamora-Garcia did not give Astin probable cause to search the vehicle, Zamora-Garcia consented to the search.

> A defendant's voluntary consent to be searched is an exception to the Fourth Amendment's warrant requirement. *Schneckloth v. Bustamonte*, 412 U.S. 218, 222, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973). A court determines whether consent is voluntary under the totality of the circumstances. *United States v. Gipp*, 147 F.3d 680, 685 (8th Cir. 1998). The Government bears the burden of proving voluntary consent by a preponderance of the evidence and must show that the defendant behaved in such a manner that the officer reasonably believed that the search was consensual. *United States v. Cedano-Medina*, 366 F.3d 682, 684-85 (8th Cir. 2004). In evaluating the reasonableness of the officer's belief, we consider the characteristics of the person consenting, "including the party's age, intelligence and

4

> education, whether he was under the influence of drugs or alcohol, whether he was informed of his right to withhold consent, and whether he was aware of rights afforded criminal suspects." *United States v. Almendares*, 397 F.3d 653, 660 (8th Cir. 2005). We also consider the environment in which the alleged consent took place, "specifically (1) the length of time he was detained; (2) whether the police threatened, physically intimidated, or punished him; (3) whether the police made promises or misrepresentations; (4) whether he was in custody or under arrest when the consent was given; (5) whether the consent occurred in a public or a secluded place; and (6) whether he stood by silently . . . as the search occurred." *United States v. Smith*, 260 F.3d 922, 924 (8th Cir. 2001).

*United States v. Esquivias*, 416 F.3d 696, 700 (8th Cir. 2005). The record does not reveal Zamora-Garcia's age, but it is apparent that he is an adult. Based on his interactions with Astin as shown on the video-recording of the traffic stop, he appears to be of average intelligence. Although he is of Hispanic ethnicity, the video-recording shows that he is fluent in English. It does not appear that he was under the influence of drugs or alcohol. He was not told that he had the right to withhold consent, but Astin's question plainly implied that he was not required to consent. The record does not indicate what Zamora-Garcia knew regarding rights afforded to criminal suspects. Zamora-Garcia was detained only a few minutes before he gave consent to the search. Astin did not threaten, physically intimidate, or punish him. No promises or misrepresentations were made to him. He was not under arrest. When Zamora-Garcia consented to the search, he was in Astin's patrol car on the side of an interstate highway. During the search, he stood by silently, watching the search. Indeed, he voluntarily assisted by opening the trunk and by removing a large bag that was impeding the search of the trunk. Considering the totality of the circumstances, the government met its burden of proving by a preponderance of the evidence that Zamora-Garcia voluntarily gave consent to the search.

The scope of a suspect's consent to search is determined by a reasonableness standard: what would a reasonable person have understood by the exchange between the officer and the suspect?

*United States v. Ferrer-Montoya*, 483 F.3d 565, 568 (8th Cir. 2007). Here, Zamora-Garcia placed no qualifications or limits on his consent to Astin's search, nor did he ever object or suggest that he wished to withdraw his consent to the search. The search did not exceed the scope of Zamora-Garcia's consent. *Id*. at 568-69; *see also United States v. Martel-Martines*, 988 F.2d 855, 858 (8th Cir. 1993).

A consensual search generally may not be destructive. *United States v. Guevara*, 731 F.3d 824, 830 (8th Cir. 2013). Nevertheless, once Astin discovered the hidden compartment, he had probable cause to search the vehicle in a destructive way. *Id*. at 831. "Probable cause exists when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found in a particular place." *United States v. Rodriguez*, 711 F.3d 928, 935 (8th Cir. 2013); (quoting *United States v. Fladten*, 230 F.3d 1083, 1085 (8th Cir. 2000)). Furthermore, because Astin no longer needed Zamora-Garcia's consent to continue the search after he had discovered the hidden compartment, any effort to withdraw or limit his consent at that point would have been fruitless. *Guevara*, 731 F.3d at 830.

Zamora-Garcia also has moved to suppress any statements once he was in custody and was not provided his *Miranda* warnings. He has not, however, specified what statements that he made and wishes to have suppressed, and it does not appear that he made any incriminating statements. During the traffic stop, he admitted owning the car and stated that he had owned the car for approximately three months, but he was not under arrest or in custody when he made those statements. The briefs of the parties address the issue concerning suppression of statements only in a cursory fashion, and neither party argued the issue at the hearing. Therefore, the Court will deny the motion to suppress Zamora-Garcia's statements without prejudice to his right to renew the

motion. If he renews the motion, he should specifically identify the statements that should be suppressed, and he should provide a more complete brief on the issue.

## CONCLUSION

Astin had probable cause to stop Zamora-Garcia's vehicle. Zamora-Garcia voluntarily consented to Astin's search. Because the consent was unqualified, and because Zamora-Garcia stood by silently watching the search without attempting to withdraw his consent, the search did not exceed the scope of the consent. Furthermore, when Astin found the hidden compartment, he had probable cause to continue the search whether or not Zamora-Garcia continued to consent thereafter; and after he found the hidden compartment, Astin had probable cause to search in a destructive way. Therefore, Zamora-Garcia's motion to suppress is DENIED. Document #30.

IT IS SO ORDERED this 23rd day of June, 2014.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE